The next matter, number 24-1831 United States v. Hassan Abbas. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin. Good morning. My name is James Mason. I am for the appellant, represent the appellant Hassan Abbas. I'd like to ask for a minute for rebuttal. You may have a minute. Great, thank you. May it please the court, there are a number of issues here. I'm going to, unless the court has other questions otherwise, I'm going to just stick with the first two issues, specifically the base offense level and then going to the special offense money laundering enhancements. When we look to the base offense level, you gotta look, Hassan Abbas was convicted of wire fraud and a money laundering conspiracy. The guidelines require a referring to the guideline for the underlying conviction in that case, 12b1.1, which requires an offense referenced to this guideline with a maximum sentence and, hand is also important, with a maximum sentence of 20 years or more. The term reference to the guideline is defined and it's defined as saying it's specifically referenced in appendix A for the offense of the conviction. So it's the interplay of these two guideline provisions that you have to go in, starting with 2s1.1, going back to the base offense level. And the 18 U.S.C. 1956 does not reference the fraud, the 2b1.1 in the guidelines. It's a simple matter. When the district court was deciding this issue, I think essentially the district court said, well, it is referenced in the guideline, therefore it goes to, it's going to be a base offense level of seven. And it also fits the 20-year, at least the 20-year maximum. So what was argued below and what was argued also by probation at the time is that it has to be specifically referenced. And the only thing specifically referenced in 18 U.S.C. 1956 when you go to appendix A is 2s1.1. And that sort of ends the issue with that. The court saying you can go to anything goes against what the actual referenced by the guideline language that's in that statute. And so ultimately I think it was a clear issue where the base offense level had to start at six, and the district court didn't do that. The circuits that have addressed this have, for the most part, have followed this guideline. They have said that in these circumstances we are looking at simply a base offense level of six. Am I confused? I looked at some of those cases and they seem to be mostly this has been dealt with and unpublished. The Seventh Circuit and the Sixth Circuit, so that's Hallahan and Abdus-Salam, those are published cases. The Ninth Circuit and the Fourth Circuit, those were unpublished. And one of the things in its brief the government pointed out was, yes, but those didn't deal with cases that have the maximum sentence of at least 20 years. And I think our position in that position of probation below was you don't even get to that. It's a two-part test. You have to start, is it referenced by the guideline? And none of those cases were referenced by the guideline. And those cases all were decided on the issue of whether it was referenced by the guideline. So what do you make of the government's argument that the word and as opposed to the sort of crucial to understanding how we're interpreting this? I mean, I think it's undisputed that your client was convicted of an offense that carried more than 20. Yes, it is undisputed that. And so, but I think when you look at the definition of an offense, you have to go to how is reference to this guideline specifically referenced? Because that's how it was defined. If we were just talking about, we're just trying to interpret that phrase, then without having some sort of guidance of what that phrase means, well, then we can have a sort of a distinction between A and B. But I think when it is specifically defined as referenced by this guideline, referenced to this guideline, which says specifically referenced in Appendix A for the offense of the conviction, then I think it's a distinction we don't need to have that because it is specifically defined in the sentencing guidelines. So I guess my response to your question is that I don't think it actually matters because the Sentencing Commission went ahead and defined that phrase itself. And I think that's the distinction that the other cases that addressed this made it I think the DC Circuit is the only one that sort of went down that road of looking at the and and the the. If we agreed with one of these arguments but not both, would, how would, would that affect the sentencing here? Yes, I think it would affect the sentencing because there's specifically, this is not a case where sometimes I'm up here and I'm like, oh well you we don't actually know specifically what the judge says because he says well I probably will do this. Or the judge was very specific and at the Appendix 169-70 he says there are so many guideline, different guideline issues, I don't know what I would do depending on how they all turned out. The judge was very specific about it's going to have an effect or it could have an effect and I'm not saying that my sentence that I'm giving, I'm giving this no matter how these sentences, how these issues come out. I think it would change his, he's leaving open the possibility. He imposed a much higher sentence the last time we were here and came back in and said I think that was a fair sentence but this is a de novo review and I'm going to look at this as a de novo review as he should and I think probably do the same thing here and he was clear and that's in the sentencing, this is the second sentencing, that he was open to what it would be if this court told him that those guidelines, his interpretations were different. I'll briefly touch on the money laundering issues unless there are other questions. There were two sets of enhancements that were applied and these, there is a note to 2S1.1 that specifically bars, this is note, application note 3C, that specifically bars applying one of those when there, when the defendant was convicted of a conspiracy under 18 U.S.C. 1956 and the sole object of that conspiracy was to commit offense set forth in 18 U.S.C. 1957. That, this applies and the issue that the district court found that he was doing a lot more than third-party money money laundering. He was more actively involved as far as implementing the conspiracy general as far as opening accounts, sending notice to the co-conspirators, just much more active involvement than strictly money laundering. I agree that the judge certainly found that and that gets to our whether, I think that's sort of the distinction in the zero-point offender argument that was our third issue. But here, the sentencing guidelines is specific. It says if this is the sole, if this is the sole point, which was a money laundering conspiracy, then these don't apply and the reason the Seventh Circuit got in, the reason the Seventh Circuit and Tedder said this doesn't apply is because this is the sole point of the money laundering conspiracy and therefore we're going to apply this non-application note of 3C. If you apply that non-application note, the second enhancement can't go come in. That's a four-point difference right there and it doesn't matter the nature of the conspiracy. It matters that there is a conspiracy and what's the sole, the what's the the sole object of it and that was the money laundering experience. And yes, I know the judge certainly said this was a broader thing, but it still wouldn't apply and that's why the Seventh Circuit addressed it in Tedder that way. There aren't any other questions? Thank you. I'll sit down. Thank you. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin. Your Honor, may it please the Court, Randall Crownman on behalf of the government. Starting with the base offense level argument, I mean there's a bit of talking past each other that's going on in the briefing on this issue and in the argument. The government's point is that, and I think Atanya is the one that makes it the most clear-cut, but that the direct, the specific language of the provision shows that base offense of level seven applies no matter how you get there, whether it's a cross-reference directly, if there is an offense for a crime that is directly referenced, wire fraud is directly referenced, there is a conviction. It is not the conviction that brought you there by the way the guidelines work, but it is a conviction. And that's what I think Atanya rightly focuses on. Those guidelines have other provisions that say the offense of conviction or that have specific references that sort of suggest that we're talking about, since you do in the guidelines, you go through each one separately and then pick the highest that you might be looking at one at a time. This one's not written that way. It says when you look at it, and you're coming in here through money laundering, but is there an a conviction for an offense referenced, wire fraud is, with a sentence of higher than 20 years, wire fraud is 30 years. So the answer is yes to all those questions that brings you into the base offense level of seven. The other cases, what we point out, he's correct, those cases do focus on the indirect referencing, but that's because they had to. And that sort of brought, I think, clearly in the distinction between the Sixth Circuit's Abdus Salaam case and the Nikolovsky, because Abdus Salaam did not have another offense of conviction that had 20 years. So they had to ask the question, can we look at the money laundering itself as being that thing that's referenced? And they said, that's an indirect reference, no. In Nikolovsky, there was a bank fraud underlying conviction that did qualify. They said, that's distinguishable. That's a different situation. We have a conviction. So when we go through the process, we count it. It's very straightforward on the cases. And again, the fact that the argument was about indirect references in those other cases he cites, including the Seventh Circuit case, was again, because we had, the government had to make that argument because there was no conviction for the underlying offense. And as we point out, that is also supported by the policies underlying the direct versus indirect distinction to try to raise the bar of the offense level for those who are direct money launderers or participants in the underlying offense. And it makes sense in light, even the guidance on which probation relied itself, isn't to the contrary, because it talks about situations in which, where a six would apply, where the person was convicted of money laundering, but only involved in an underlying offense of wire fraud. They don't say convicted. So on the plain language of that guidance itself, it's not inconsistent with the view the government is taking. But I think this is all, you know, consistent with the plain language, I think Otonio makes the most clear, also consistent with this court's decision in Cruz-Loreano that said that when you apply this cross-reference, you calculate the underlying offense as it would be calculated standing alone. And although it didn't address the specific question of base offense levels, that thought process is consistent with the government saying here, if we're looking at it standing alone as wire fraud at that point, then that is directly referenced through Appendix A, has the requisite number of years, and it qualifies. So just briefly on the money laundering, there wasn't a lot of question and answer about that. But again, I think that one is just straightforward on the language of the money laundering application, or the application note. The application note specifically applies to those indirect money launderers who are, reach their base offense level under 2S1.1A2. It's, by its terms, does not apply here, where he was, his base offense level for money laundering was arrived at under 2S1.1A1. And Tedder takes the view that you can disregard that as merely a matter of captions. But I think that's clearly wrong. If the sentencing commission decides to make an application note excluding particular conduct or adding a particular type of enhancement to one place and not another, that has to be respected. Otherwise, any heading in the application notes would essentially be meaningless. If the court can find that it theoretically should apply equally to other contexts, they can simply apply it. But that's obviously not the way the guidelines work. I think the Seventh Circuit was wrong to think that they could be simply disregarded and suggest that it was an error in drafting. And as we point out, again, for reasons made clear by the distinction between direct and indirect money launderers and the intent to make direct launderers pay, have a higher sentence, there's a good reason why they might create a reduction and then say, we're not going to apply that reduction, or an exclusion, and then say we're not going to apply it to the direct money launderers because we want to preserve that higher sentence for direct money launderers. And there's just one more thing I want to raise, although it was not raised earlier, just because it maybe clarifies and simplifies an issue that is raised in the brief, and that is with respect to the zero-point offender. And this is the question about whether substantial financial hardship was caused to Evelyn Fessenden. And we point out that the court found that his involvement was far more than just simply receiving money, that he did a lot more with creating the accounts, moving money around. But I think there's a sort of a clarifying point that I think is made clear in this court's opinion in the initial appeal, which is the reason that Evelyn Fessenden didn't get her money back is due to the direct actions, personal actions of this defendant, which is he moved the money away before she could. A lot of people who found out that they'd been defrauded quick enough did get their money back, and they did not suffer substantial financial hardship. They suffered concern about where their money was, but they ultimately got some or all of it back. She got nothing back. And this is set forth in the First Circuit's opinion. I'll just point it out because it happens to have been walked through in some detail in the opinion. This is 100 Fedforth 267, and it's at pages 276 to 277. They walk through the flow of funds and show that the money that Evelyn Fessenden put in was moved away by a boss within days to offshore accounts and taken out for his personal use. And that's why she suffered a financial hardship. If he hadn't done those things, the money would have been there for her to recover. So I think that the direct language of the exclusion from zero point offender is caused substantial financial hardship. He did that by personal actions by removing the money so that she could not receive it back. And so I think that simplifies this from this to the general case of the level of his participation to show that his personal actions caused the financial exclusion from zero point offender. If there aren't any other questions, we'll go on the brief for the remaining issues. Thank you. Thank you, counsel. At this time, the counsel for the appellant, please reintroduce himself on the record. He has a one minute rebuttal. Thank you. James Mason for the appellant, Hassan Abbas. Mr. Crump said that it doesn't really matter what's the offense that brought you there. I think it does matter. It sort of reminds me of the adage, you should dance with the date that brung you. The language says specifically referenced on appendix A for the offense of the conviction. If it doesn't matter how you got there, if it doesn't matter if you're cross referenced in or directed in there, then that language becomes superfluous. It has to be specifically referenced. And because there's this debate, one of the things we didn't talk about originally was, I think the rule of lenity applies, that because there is an honest disagreement on that, how this should be applied, it should be construed in Hassan Abbas's favor. The court said, but it has to be unclear. And I don't think the language itself has to be unclear. It's the interpretations that have to be unclear. And that's why I would say lenity would apply in this circumstance. Did you want to address the last point before you sit down? Dealing with the zero point offender? Yes. So first of all, there isn't a dispute about this financial hardship that was given to Ms. Fessenden. Our issue is there's a distinction between the but-for causation and the personally caused. The zero point offender, the provision that was actually implicated by zero point offender, says that you must personally cause it. And there's a distinction between how they, that it's they're decided by separate sentencing guidelines. And each of those must be determined differently. The fact that you have, that you're, someone else may have personally helped separate this complaining witness from her money. But I mean, you can't dispute that your client prevented her from recovering her money by moving it around once it was tendered to this account. I agree with you. But I would say that the harm was caused at the point of when she was, when she transferred the money. And so there's a difference between what he did when he created the bank accounts, and then ultimately moved the money, and the actions that made her do the transfer. That's why we're saying there's a difference between personally caused and but-for causation. And so that's the, I think that's our distinction, is that there's nobody, the government's never alleged that he sent any emails, he was any of these online personas. But he was found guilty of moving that money. Yes, it prevented the recovery if she would have asked to get that money back through like a, having a transaction done. Sorry, transaction recalled. But I think that's a distinction between but-for and personally caused. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.